**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-20-08072-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Jeffrey S Page, | |
| Defendant. | |

Before the Court is the government's supplemental response (Doc. 22) to the Court's April 16, 2021 Order to Show Cause (Doc. 16), as requested by the Court's June 28, 2021 Order granting limited discovery into the timing of Defendant Jeffrey S. Page's receipt of the refund check (Doc. 19). For the reasons that follow, the Court will deny the government's request to order Page to respond to the Complaint and the Court will dismiss the Complaint with prejudice as barred by the applicable statute of limitations.

**I.     BACKGROUND**

In this case, the government sued Page under 26 U.S.C. § 7405 to recover an erroneous tax refund. Page did not respond, and after the clerk entered default, the government moved for default judgment. (Docs. 13, 15). The Court denied the government's motion for default judgment and ordered the government to show cause as to why this case should not be dismissed with prejudice as barred by the statute of limitations. (Doc. 16). On April 30, 2021, the government responded to the Court's Order to Show Cause requesting the Court to find the Complaint timely, or in the alternative,

order limited discovery into the timeliness of the Complaint based on the underlying facts outlined below. (Doc. 18). The Court granted the government's request for limited discovery and ordered the government to either re-move for default judgment or file a supplemental response to the Court's show cause order after serving interrogatories on Page. (Doc. 19).

In both of its previous Orders (Docs. 16, 19) the Court noted that the applicable statute of limitations, outlined in 26 U.S.C. § 6532(b), requires that recovery of an erroneous tax refund "shall be allowed only if such suit is begun within 2 years after the making of such refund." The Court considered the law of other circuits and was not persuaded to depart from the Ninth Circuit's binding precedent that "[a] refund is considered to have been made on the date the taxpayer received the check." *United States v. Carter*, 906 F.2d 1375, 1377 (9th Cir. 1990).

The Complaint alleges that the IRS mailed the erroneous refund check on May 5, 2017 and that Page cashed the check on April 5, 2018. (Doc. 1 at 2, 3). The government did not bring the instant suit until March 31, 2020. (Doc. 1 at 5). The Complaint does not allege, and the limited discovery did not identify, the date on which Page received the erroneous refund check. Although Page is in default in this case, he responded to the government's interrogatories to state: he cannot recall the exact date he received the check and does not have any related records; he "told a retired-CPA that [he] work[s] with at the airport about it 2-3 months after [he] received the check;" and that he "tried to get in contact with the IRS to ask about [the check]," which he ultimately cashed after no response from the IRS. (Doc. 22 at 4–5).

## II.     DISCUSSION

The government's Supplemental Response first argues that the Complaint was timely because the statute of limitations on its suit, under 26 U.S.C. § 6532, did not (and should not) begin to run until the date that Page cashed the erroneous refund check, i.e., April 5, 2018. (Doc. 22 at 5–8). In the alternative, the government argues that if the statute of limitations begins upon Page's receipt of the erroneous refund check (instead of the date

of deposit), the Court is without sufficient information to determine that the government's Complaint is barred by the statute of limitations in view of Page's unilluminating interrogatory responses. (*Id.* at 8). The government urges the Court to order Page to file a responsive pleading to address the factual question regarding the date of receipt. (*Id.* at 9–10).

### a. Statute of Limitations

The government puts forth three reasons why the Court should abandon applicable Ninth Circuit precedent that the statute of limitations runs until two years from the date of a taxpayer's receipt of an erroneous refund check. The Court is not persuaded.

First, the government argues that its right to sue to recover an erroneous refund does not ripen until the taxpayer actually cashes the check, so the statute of limitations should not begin to run until that same point in time, i.e., when the government contends the refund is "considered complete." (Doc. 22 at 6). While the government cites to no authority for this position in its supplemental response, the government appears to be relying on the reasoning in *Commonwealth Energy Sys. & Subsidiary Companies*. *See* 235 F.3d 11, 15 (1st Cir. 2000). However, the Court is not in the First Circuit and is not at liberty to choose which Circuit Court's law and logic to follow.

Next, the government argues that relying on the check clearance date would provide more certainty in cases like this where the date of receipt of the refund check is unknown. (Doc. 22 at 7). However, as noted in *U.S. v. Woodmansee*, 388 F. Supp. 36, *rev'd on other grounds*, 578 F.2d 1302 (9th Cir. 1978):

> [a] construction based on final payment…would result in a nonuniform date of payment. There would be a different date depending on whether the taxpayer cashed the refund check in a currency exchange, deposited it in his checking or savings account, or merely stored it in a shoebox. Also, a difference in banking laws would result in different payment dates.

*Id.* at 46. The Court agrees with the *Woodmansee* court and is unpersuaded that relying on the check clearance date provides any more certainty such that a deviation from Ninth Circuit law is required here.

The government also points out that "[i]f the date of receipt starts the tolling period, a taxpayer can conceivably hold on to a check and not cash it until the day before it becomes void" which it alleges would "hurt[] the IRS and the public fisc" by depriving the IRS of "11 months of a 24-month period to bring its erroneous refund action." (*Id.*) However, as evidenced by the Exhibit 1 to the government's Motion for Default Judgment, an independent ledger existed for Jeffery Page's tax account transactions documenting that the IRS issued him a $491,104.01 refund in May of 2017. (Doc. 15-1 at 9). It seems equally hurtful to the public fisc that the IRS, having its own documentation of an erroneous tax refund issuance, should be incentivized to wait until the Federal Reserve clears a check to identify a misallocation of nearly a half of a million dollars in taxpayers' funds.

Third, the government reminds the Court that the check clearance rule, as applied to this case, "is consistent with the principle that ambiguous statutes of limitations in Government actions should be interpreted in the Government's favor." (Doc. 22 at 7). Unfortunately for the government, however, the allegedly ambiguous statute in question has already been interpreted in *United States v. Carter*, where the Ninth Circuit applied that same principle to decide the case in favor of the government and held that the date of receipt controls. *Carter*, 906 F.2d at 1377. The government here cites no authority requiring the Court to reinterpret the statute and go against binding Ninth Circuit precedent so that the government may prevail in every variation of erroneous tax refund cases that arise.

Additionally, the government contends that *Carter*, upon which the Court relies, only considered the date of mailing and date of receipt in its analysis and holding, such that *Carter* is not controlling and does not address the specific question in this case. (Doc. 22 at 7). However, the government appears to be conflating the date that the check is deposited with the date the check clears the Federal Reserve. While it is possible the check deposit and clearance could occur on the same day, the government makes no mention of a date that the check actually cleared at the Federal Reserve. So, it seems that the government is definitively basing its argument on the date Page deposited the check, April 5, 2018, but is relying on case law stating that the check clearance date controls. *See Commonwealth*

*Energy*, 235 F.3d at 15 ("Although the Treasury cannot know for certain when a check is received by a taxpayer, **it can know when that check clears**, and determine whether or when to file suit accordingly.") (emphasis added); *see also United States v. Greene-Thapedi*, 398 F.3d 635, 639 (7th Cir. 2005) (adopting check clearance rule from *Commonwealth Energy*). Following the government's own logic that *O'Gilvie* and *Carter* did not address the exact question at issue here, it appears that *Commonwealth Energy* and *Green-Thepedi* also do not this question either, to the extent their holdings are limited to a determination that the statute of limitations begins to run as of the check clearance date, not the date of deposit.

Thus, as discussed at length in the Court's April 16, 2021 (Doc. 16) and June 28, 2021 (Doc. 19) Orders, the Court is not persuaded by the government's arguments and applies the longstanding Ninth Circuit rule that the statute of limitations outlined in 26 U.S.C. § 6532(b) begins to run from the date that an erroneous refund check is received, not from the date the check is cashed. *Carter*, 906 F.2d at 1377.

### b. Case Disposition

While statute of limitations issues are usually raised as an affirmative defense that the defendant bears the burden to prove, "district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." *Donell v. Keppers*, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011) (quotations omitted); *see also Taiwan C.R. Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*, 486 F. App'x 671, 671–672 (9th Cir. 2021) ("[T]he district court did not err by addressing the statute of limitations issue *sua sponte* in ruling on plaintiff's motion for default judgment.").

The Court allowed the government to conduct discovery into this issue and as the government notes, the interrogatory responses "fail to definitely answer the question of when [Page] received the erroneous refund check." (Doc. 22 at 8). Ordinarily, failure to respond to a complaint allows courts to deem the facts pled in the complaint as defendant's admissions. *See DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007). However,

the government failed to allege the date of receipt (or the check clearance date upon it seeks to rely) in the Complaint here, so the Court cannot use Page's lack of response to deem an admission regarding the date of receipt of the check. Additionally, because Page responded to the government's interrogatories stating that he does not know which day he received the check, the Court is not at liberty to deem his response as an admission that he received the check on a particular date.  In both prior Orders, the Court noted that it defies common sense to believe it took 330 days for Page to receive the check in the mail, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). (Docs. 16, 19).

Finally, the government cites no authority for its position that the Court should force Page to come out of default to answer the Complaint and allow the government to conduct full discovery to prove their case, and the Court declines to do so.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the United States' request to order Page to file a responsive pleading is **DENIED** (Doc. 22).

**IT IS FURTHER ORDERED** that the Complaint is **DISMISSED** with prejudice as untimely and barred by the statute of limitations laid out in 26 U.S.C. § 6532(b) and the Clerk of the Court shall enter judgment accordingly.

Dated this 25th Day of October, 2021.

*[signature]*
James A. Teilborg
Senior United States District Judge