**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Jeffrey S Page,<br><br>　　　　　Defendant. | No. CV-20-08072-PCT-JAT<br><br>**ORDER** |

Pending before the Court are the Government's motion for default judgment (Doc. 39) and Defendant Jeffrey Page's ("Defendant") motion to dismiss (Doc. 40). Parties filed respective responses. (Docs. 43, 44). The Government filed a motion for extension of time to file a reply. (Doc. 45). The Court now rules on the motions.

**I.      BACKGROUND**

　　**a.  Factual Background**

Defendant was entitled to a tax refund of $3,463 for the taxable year 2016.[1] (Doc. 1 at 3; Doc. 15-1 at 3). On May 5, 2017, the Internal Revenue Service ("IRS") mailed Defendant a tax refund check for the erroneous amount of $491,104.01. (Doc. 1 at 3; Doc. 15-1 at 3). Defendant cashed the check on April 5, 2018. (Doc. 1 at 3; Doc. 15-1 at 14).

The IRS contacted Defendant multiple times to request that he return the erroneous portion of the refund to the Government. (Doc. 1 at 3). On December 9, 2019, Defendant returned $210,000. (Doc. 1 at 3). The Government alleges that Defendant retained the

---

[1] However, because Defendant had outstanding income tax liabilities, the $3,463 refund would have been used to offset those liabilities. (Doc. 39 at 2).

remainder of the refund for his "personal use and enjoyment." (Doc. 1 at 3).

### b. Procedural Background

On March 31, 2020, the Government filed this case under 26 U.S.C. § 7405 to recover the remaining balance of the erroneous refund[2] plus interest. (Doc. 1 at 1). On June 16, 2020, the Government filed Defendant's signed waiver of service. (Doc. 10). Because Defendant did not file a response within 60 days of when the waiver was sent, the Government moved for default under Federal Rule of Civil Procedure 55(a) on August 24, 2020. (Doc. 11). The Clerk entered default on August 25, 2020, and the Government moved for default judgment under Rule 55(b) on February 17, 2021. (Docs. 13, 15).

The Court denied the Government's motion for default judgment on statute of limitations grounds. (Doc. 16). The Government appealed and the Court of Appeals reversed, finding that the complaint in this case was filed within the applicable statute of limitations. (Doc. 33-1). On remand, the Government has again moved for default judgment under Rule 55(b). (Doc. 39). Now that interest has accrued, the Government seeks an award of $448,654.74. (Doc. 39-1 at 1-3). Defendant filed a response to the motion, (Doc. 44), which was untimely under Local Rule 7.2. Defendant also filed a motion to dismiss, (Doc. 40), which the Government opposes, (Doc. 43). The Government now seeks to extend the deadline to file a reply. (Doc. 45 at 1). The Government attached a copy of its proposed reply to its motion. (Doc. 45-1 at 1-6). The Court will consider the Government's reply brief.

Consistent with the Court of Appeals' specific mandate to "consider on remand whether the government is entitled to default judgment," (Doc. 33-1 at 16), the Court will first analyze the Government's motion for default judgment.

### II. DEFAULT JUDGMENT

Once the Clerk has entered default, a court may, but is not required to, grant default judgment under Rule 55(b) on amounts that are not for a sum certain. *Aldabe v. Aldabe*,

---

[2] For purposes of the Government's motion and this Order, it is assumed that Defendant owes back the amount of the erroneous refund check ($491,104.01), minus the $3,463 refund he was entitled to (at least in theory), minus the $210,000 he returned, for a total of $277,641.01.

- 2 -

616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). In considering whether to enter default judgment, a court may consider the following factors:

> (1) The possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When considering these factors, a defendant is deemed to have admitted all well-pleaded allegations in the complaint but does not admit allegations related to damages or those that do no more than "parrot" the elements of a claim. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

### a. Possibility of Prejudice

A possibility of prejudice exists when failure to enter default judgment denies a plaintiff judicial resolution of the claims presented or leaves them without other recourse for recovery. *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Prior to commencing the current case, the Government "contacted [D]efendant on numerous occasions and requested that he voluntarily return the erroneous refund to the IRS." (Doc. 1 at 3). Defendant eventually refunded $210,000. (Doc. 1 at 3). The Government again "contacted [D]efendant and requested that he voluntarily refund the outstanding balance in order to avoid this lawsuit." (Doc. 1 at 3). Defendant did not, and the Government initiated this case. Because the Government has given Defendant multiple opportunities to voluntarily return the remaining money and Defendant has not done so, the Government's only recourse is through this litigation. This factor therefore weighs in favor of granting the motion.

### b. Sufficiency of Complaint and Merits of Plaintiff's Substantive Claim

The second and third *Eitel* factors "are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Ariz. Board of Regents v. Doe*, 555 F. Supp. 3d 805, 816 (D. Ariz. 2021) (internal quotation marks omitted) (quoting *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)). "Of all the *Eitel* factors, courts often consider the second

and third factors to be the most important." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *5 (D. Ariz. Mar. 27, 2020) (citation omitted).

Here, the Government brings an action under 26 U.S.C. § 7405, which authorizes the Government to recover an erroneous tax refund through a civil action. "The United States bears the burden of proof to establish that: (1) a refund was paid to the taxpayer; (2) the amount of the refund; and (3) the taxpayer was not entitled to the refund." *United States v. Anthony*, No. CIV 97-1772-PHX-SMM, 1999 WL 424884, at *2 (D. Ariz. Apr. 27, 1999). Taken as true, the Government's factual allegations in the complaint state a claim under 26 U.S.C. § 7405. The Government has established that (1) the Government sent Defendant a check for $491,104.01, (2) Defendant cashed the check and retained $277,641.01, and (3) Defendant was not entitled to that money. Defendant himself "acknowledges the underlying debt" at issue in this case. (Doc. 44 at 1). The second and third *Eitel* factors therefore favor entry of default judgment.

### c. Sum at Stake

"Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of [Defendant's] conduct." *Bankers Ins. Co. v. Old W. Bonding Co., LLC*, No. CV11-1804 PHX DGC, 2012 WL 2912912, at *2 (D. Ariz. July 16, 2012). Here, the Government concedes that the amount of money at stake—$448,654.74—is substantial. This weighs against granting default judgment.

### d. Possibility of Disputed Material Facts

Considering the allegations that are now deemed admitted and the documentary evidence that the Government submitted, "no genuine dispute of material facts would preclude granting [the Government's] motion."[3] *See PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Moreover, Defendant does not appear to dispute that he owes the Government money. (Doc. 44 at 1). Thus, this factor weighs in favor of granting the motion.

---

[3] The Court notes that although Defendant submitted a motion to dismiss, Defendant does not dispute any material facts in that motion. (Doc. 40). Furthermore, as stated above, Defendant "acknowledges" the underlying debt. (Doc. 44 at 1).

### e. Excusable Neglect

This factor presents a closer call. Defendant was undoubtedly aware of both the initiation of this lawsuit and the threat of default. Defendant "execute[d] a Waiver of Service of Summons Form at the United States' request," (Doc. 29 at 3), and Defendant exchanged emails with the Government in which the Government "advised him that if he did not file a responsive pleading, the [Government] would move for entry of default against him." (Doc. 39 at 3 (citing Docs. 11, 15-2)). After default was entered the first time, (Doc. 13), Defendant again contacted the Government and the Government informed him that it "intended to file a Motion for Default Judgment against him." (Doc. 39 at 3). Defendant still did not respond.

On the other hand, Defendant's motion to dismiss suggests that Defendant believed "the matter had been fully resolved and could not be refiled" as of the Court's October 25, 2021 Order, (Doc. 23), in which the Court dismissed the case with prejudice. (Doc. 40 at 1). Defendant maintains that "winning an appeal does not erase the fact that this case was once fully dismissed with prejudice, which should have ended the dispute." (Doc. 40 at 2). Regardless of this belief, Defendant was apprised of the ongoing nature of this case after the appeal. The Government forwarded Defendant the Court's September 24, 2024 Order, (Doc. 34), via email and express mail. (Doc. 39 at 6). Defendant responded to the Government and the parties "discussed the possibility of reaching a stipulated resolution." (Doc. 39 at 6). Thus, even post-appeal, it is clear that Defendant understood that the case was ongoing.

Defendant now explains that his "default was not an attempt to evade responsibility, but rather the outcome of bad legal advice[4] combined with years of IRS-related

---

[4] More specifically, Defendant contends that he "sought legal guidance and was advised to allow the case the default—a strategy he now realizes was a serious mistake." (Doc. 44 at 1). Defendant claims he was not "properly informed of the consequences." (Doc. 44 at 1). However, as the Government's reply notes, Plaintiff "does not identify the source" of the legal advice and does not specify "whether the source was a lawyer." (Doc. 45-1 at 2). While this may be a reason to pursue a separate legal action against the unnamed individual who allegedly gave this legal advice, the existence of bad legal advice, or regret about a prior decision, does not, and cannot, undo the entry of default.

complications and mismanagement."[5] (Doc. 44 at 1) (footnote added). Defendant asks the Court to "consider" these additional facts, and the Court does, but none of these facts can excuse Defendant's absence from this case for over four years. Consequently, this factor weighs in favor of granting the motion.

### f. Policy Favoring Merits Decisions

Although it is true that "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, that is made "impractical, if not impossible," when a defendant fails to answer, *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. Thus, this factor does not preclude entering default judgment against Defendant. As discussed below, Defendant's attempt to reinstate this Court's pre-appeal dismissal on statute of limitations grounds is procedurally impossible and Defendant has made no other "merits" defense in any filing.

### g. Weighing the Factors

On balance, the *Eitel* factors weigh in favor of granting the Government's motion for default judgment. Having concluded that entry of default judgment is appropriate under the circumstances, the Court will now turn to evaluate the Government's requested remedy.

### III. REMEDY

The Government requests $448,654.74. (Doc. 39-1 at 1-3). "This amount accounts for the initial $491,104.01 erroneous refund the IRS paid to [Defendant], a subsequent amount of $210,000 that [Defendant] paid back to the IRS . . ., additional small payments or credits, and interest due from [Defendant]." (Doc. 39-1 at 3). The Government attached a full copy of its balance computations. (*See* Doc. 39-2 at 2-3).

"The Court may enter a default judgment without a damages hearing when, as here, 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Million v. Pindernation Holdings LLC*, No. CV-23-00072, 2023 WL 2813684, at *5 (D. Ariz. Apr. 6, 2023) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)). In this action the

---

[5] As the Government points out, Plaintiff "offers virtually no detail about these disputes . . . [and] does not explain why a history of errors or miscommunications . . . with the IRS excuses him from the rules governing other litigants in court." (Doc. 45-1 at 2).

requested damages are capable of mathematical calculation because they are the amount of the erroneous refund plus statutory multipliers. *See id.* The Court finds that the Government has sufficiently established the requested damages. (Doc. 39-1 at 1-3). Therefore, the Court will enter default judgment in the amount of $448,654.74 against Defendant.

### IV. MOTION TO DISMISS

On the same day that the Government filed its motion for default judgment, Defendant filed a motion to dismiss. (Doc. 40). As discussed above, the Court was given a specific mandate from the Court of Appeals to "consider on remand whether the government is entitled to default judgment." (Doc. 33-1 at 16). Thus, the Court is not at liberty to truly entertain Defendant's motion. However, because the Court must decide how to proceed with Defendant's motion, the Court makes the following, limited comments.

"If the Clerk approves and enters default against the defendant, then the defendant is no longer able to respond to the complaint without first filing a [motion to set aside default]." (Pro Se Handbook at 38, available at https://publicapps.azd.uscourts.gov/prose-survey/ (last visited March 11, 2025)). In other words, after the Clerk enters default, any relief must come under Federal Rule of Civil Procedure 55(c). Under Rule 55(c), a court may grant a motion to set aside default upon the finding of "good cause." Fed. R. Civ. P. 55(c).

Here, because the Clerk of the Court has entered default, (Doc. 13), Defendant's motion to dismiss is not procedurally proper and does not cure the entry of default against him. Even if the Court were to interpret Defendant's motion as requesting relief from the entry of default, the Court does not find the requisite "good cause."[6] The basis for Defendant's motion to dismiss is that "this case was previously dismissed with prejudice, thereby barring further litigation." (Doc. 40 at 1). However, as the Government notes in its response, "reversal on appeal changes the preclusive nature of a lower court's judgment." (Doc. 43 at 3). At no point in the motion does Defendant argue that the Clerk's entry of

---

[6] As the Government's reply notes, Plaintiff's response, even if interpreted as a motion to vacate the default, suffers from the same deficiencies and the Court does not find the requisite good cause. (Doc. 45-1 at 3-4).

- 7 -

default was improper. Finding no good cause to set aside the entry of default, Defendant's motion to dismiss is denied.

Typically, under Federal Rule of Civil Procedure 12(a)(4)(A), "if the court denies the motion . . . the responsive pleading must be served within 14 days after notice of the court's action." However, Defendant is not entitled to file a responsive pleading within 14 days here because, as discussed above, Defendant is already in default and has not moved to set that aside.

## V.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to extend time to reply (Doc. 45) is **GRANTED** and the Court considered Plaintiff's reply brief in deciding this order.

**IT IS FURTHER ORDERED** that Plaintiff's motion for default judgment, (Doc. 39), is **GRANTED**. The Clerk of the Court shall enter judgment for Plaintiff United States and against Defendant Jeffrey S. Page in the amount of $448,654.74, plus post-judgment interest from the date of the judgment at the applicable statutory rate.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss, (Doc. 40), is **DENIED**.

Dated this 15th day of April, 2025.

_____
James A. Teilborg
Senior United States District Judge